1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| STEVEN ANGELL, and others,<br><br>              Plaintiffs,<br><br>    v.<br><br>CITY OF OAKLAND, and others,<br><br>              Defendants. | Case No. 13-cv-00190 NC<br><br>**ORDER GRANTING PLAINTIFFS' MOTION FOR CLASS CERTIFICATION AND JOINT MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Re: Dkt. Nos. 62, 63, 70 |

This case arises out of the mass detention and arrest of individuals during an "Occupy Oakland" march and protest on January 28, 2012. Before the Court are plaintiffs' unopposed motion for class certification and the parties' joint motion for preliminary approval of class action settlement. Dkt. Nos. 62, 63. The Court previously denied the motion for preliminary approval without prejudice due to several deficiencies in the proposed settlement agreement and class notice. Dkt. No. 68. After the parties submitted a revised settlement agreement and class notice, Dkt. Nos. 70-1 and 70-2, the Court held a preliminary approval hearing on December 17, 2014. No objectors appeared.

Because the Court finds that the proposed class meets the requirements for certification under Federal Rules of Civil Procedure 23(a) and 23(b)(3), the Court GRANTS plaintiffs' motion for class certification. Additionally, because the parties have made a

sufficient showing for the purposes of preliminary approval, the Court GRANTS their joint motion. However, because the revised proposed notice to the class continues to suffer from several defects, plaintiffs must file a second revised class notice in accordance with this order for the Court's approval.

# I. BACKGROUND

## A. Plaintiffs' Allegations

The complaint alleges that, on January 28, 2012, class members and others participated in an "Occupy Oakland" political protest demonstration in Oakland, California. Dkt. No. 1 ¶ 64. In the late afternoon, a group of approximately 500 to 1000 individuals marched from Frank Ogawa Plaza. *Id.* ¶ 65. As they were marching on Broadway, all class members were corralled and trapped in front of the Oakland YMCA between 23rd and 24th Streets by two lines of armed police and peace officers. *Id.* ¶ 66. The complaint alleges that the class members were pushed, clubbed, and driven into a shrinking space by these two advancing lines. *Id.* ¶ 67. The complaint further alleges that these tactics were unjustified and created a melee, filling the crowd with confusion, panic, and fear, and causing injuries. *Id.* There was no exit except into the YMCA, and some class members entered there. *Id.* According to the complaint, no dispersal orders were given on Broadway and no one gave orders or announcements telling the marchers where to go or what to do until after the police announced that the marchers were under arrest. *Id.* ¶ 66. The complaint further alleges that the entire group was placed, without probable cause, under arrest, allegedly for failure to disperse although they were given no notice or opportunity to disperse. *Id.* ¶ 68. After the announcement of the arrest, class members requested permission to disperse, which was denied. *Id.* Those who attempted to disperse were met with the use of force, causing injuries. *Id.*

The complaint further alleges that class members corralled at the detainment area, without probable cause or lawful justification, were forced to stand or sit in the street for hours. *Id.* ¶ 70. Class members were not allowed to use toilet facilities, so the only place to relieve themselves was on the street or in their clothing. *Id.* Some class members were

placed on buses and held there for additional long periods without access to toilet facilities. *Id.* As a result, class members suffered discomfort, embarrassment, and humiliation. *Id.* Class members with medical needs were barred from taking their medications. *Id.*

According to the complaint, after detaining the class members on the street, defendants tied each of the class members' hands with plastic handcuffs behind their backs. *Id.* ¶ 71. Class members were kept handcuffed for inordinate and unnecessarily long periods of time, and handcuffs/ties were intentionally or heedlessly applied too tightly, causing pain, extended discomfort, and injuries. *Id.* Defendants refused to loosen or remove the handcuffs until the class members arrived at the jail, late that night or in the early morning. *Id.*

The complaint alleges that rather than cite and release the class members, the decision was made to arrest and transport them to an Alameda County jail. *Id.* ¶¶ 3, 69. The class members were loaded onto buses and vans. *Id.* ¶ 72. The lengthy detention on the cold street was followed with lengthy waits on the cold buses where the windows were open. *Id.* All class members were transported to an Alameda County jail, and were imprisoned for 12 to 85 hours. *Id.* ¶ 3. Some class members were taken to Glenn Dyer Jail in Oakland, but the majority was taken to Santa Rita Jail in Dublin. *Id.* ¶ 72. Class members were driven on the freeway for 45 minutes to Santa Rita Jail, enduring wind and cold. *Id.*

The complaint further alleges that the decision to transport class members to an Alameda County jail subjected class members to imprisonment for long periods in overcrowded and inhumane conditions, including unheated or deliberately chilled cells, with limited seating, no sleeping facilities, sometimes standing room only, no toilet facilities, no feminine hygiene, and no food, water, or medical care. *Id.* ¶¶ 3, 69. Female class members were embarrassed and humiliated by the forced urination and pregnancy testing. *Id.* ¶ 73.

The complaint alleges that, at Santa Rita, class members were held in extremely over-crowded cells and other spaces, which lacked cots or other sleeping surfaces. *Id.* ¶ 74. Many cells were so over-crowded that there was not room for everyone to sit or lie down on

the floor.  *Id.*  Phone calls were denied for long periods of time.  *Id.*  Class members were denied access to legal counsel.  *Id.*  Toilets and sanitary facilities were inadequate or non-existent.  *Id.*  Means for personal hygiene, particularly feminine hygiene were denied.  *Id.*  Despite the winter weather, cold air was continually being blown in and class members' extra clothes were taken away.  *Id.*  No one was provided with blankets or other means to stay warm.  *Id.*  Some were deprived of food and water for extended periods of time.  *Id.*  Class members with particular medical needs continued to be deprived of needed medical care, and medication.  *Id.*  The complaint further alleges that the class members were subjected to physical and mental abuse and other inhumane and unreasonable conditions of confinement, which caused them to suffer pain, discomfort, distress, and injury.  *Id.*  All class members at Santa Rita were held for excessive periods.  *Id.* ¶ 76.

No class members were charged or prosecuted, but all now have arrest records and will incur legal costs to attempt to have the arrests removed from their records.  *Id.* ¶ 78.

**B.    Procedural History**

This case was filed on January 14, 2013, by eight plaintiffs—Steven Angell, Miles Avery, Molly Batchelder, Sri Louise also known as Louise Coles, Cicily Cooper, Shareeff Elfiki, Theodore Hexter, and Lindsay Weber.  *See* Dkt. No. 1.  The proposed class alleged in the complaint consists of "persons who were herded, corralled and then arrested in the mass arrest that occurred on the evening of January 28, 2012 on Broadway in Oakland, between 23rd and 24th Street," and who were "detained, arrested, imprisoned and never charged with any crime."  *Id.* ¶ 57.

The complaint names as defendants the City of Oakland, the County of Alameda, and individual defendants employed by the City and the County.  *See* Dkt. No. 1.  The complaint alleges causes of action under 42 U.S.C. § 1983 for violations of the First, Fourth, and Fourteenth Amendments, as well as state law rights against false arrest and false imprisonment.  *Id.*  Plaintiffs, on behalf of themselves and the class, seek (1) declaratory and injunctive relief to restrain defendants from continuing to violate plaintiffs' federal and state constitutional and statutory rights, the protections for these rights in the

1   Oakland Crowd Management/Crowd Control Policy, and from using false arrests, false

2   imprisonment, unreasonable conditions of confinement, and other unlawful actions to

3   disrupt, interfere with and deter future demonstrations and protest activities in the City of

4   Oakland and Alameda County; (2) an injunction requiring the defendants to seal, return,

5   and/or destroy any records of plaintiffs' arrests; and (3) monetary damages for the injuries

6   plaintiffs suffered when they were falsely detained, arrested and imprisoned.  *Id.* ¶ 8.

7        The parties engaged in discovery, which included exchanging written discovery,

8   taking the depositions of the named plaintiffs and City and County personnel, and

9   inspections of the Santa Rita and Glenn Dyer jail facilities.  Dkt. No. 19 at 2.  The parties

10  participated in settlement conferences with Magistrate Judge Laurel Beeler over several

11  months.  Dkt. Nos. 36, 55.  As a result, the parties were able to reach a settlement in

12  September 2014.  Dkt. No. 60.  Plaintiffs then filed a motion to certify the class, which

13  defendants do not oppose.  Dkt. Nos. 62, 62-3.  The parties also moved jointly for

14  preliminary approval of the settlement.  Dkt. No. 63.

15       While this case was pending, the case of *Spalding v. City of Oakland*, No. 11-cv-

16  02867 TEH, resolved.  The *Spalding* case was also a class action arising out of a mass arrest

17  involving the City of Oakland and the Alameda County Sheriff's Office.  Part of the

18  resolution of *Spalding* included injunctive relief regarding the application of cite/release and

19  booking procedures that will be applied in multiple simultaneous arrest situations.  *See*

20  *Spalding*, No. 11-cv-02867 TEH, Dkt. No. 95-1 at 7-9.  Plaintiffs assert that the injunctive

21  relief obtained in *Spalding* addresses and resolves the injunctive relief issues raised in

22  plaintiffs' complaint in this case and that, as a result, they are no longer requesting

23  injunctive relief.  Dkt. Nos. 62 at 22 n.2; 63 at 3.

24  **C.   Jurisdiction**

25       The Court has subject matter jurisdiction over this action under 42 U.S.C. § 1983.

26  *See* Dkt. No. 1 ¶ 9.  The Court has supplemental jurisdiction over plaintiffs' state law claims

27  under 28 U.S.C. § 1367.  All parties consented to the jurisdiction of a United States

28  Magistrate Judge under 28 U.S.C. § 636(c).  Dkt. No. 15 ¶ 13.

**D.    Overview of the Settlement Agreement**

**1.    Class Definition**

The settlement agreement defines the class as "the approximately 360 people who were arrested in the mass arrest on Broadway between 23rd and 24th Streets in Oakland on January 28, 2012, and who were never charged with any crime related to this arrest."  Dkt. No. 70-1 at 6.  The parties explained that 360 is the number of arrestees confirmed through discovery.  *Id.* n.3.

**2.    Monetary Payment to the Class**

Under the settlement agreement, the City and the County will jointly pay the sum of $1,360,000 within 15 days of the Court's entry of final judgment.  Dkt. No. 70-1 at 7. Those class members who have submitted approved claims will receive an equal part of the $1,360,000 payment after attorneys' fees and costs and the class representatives' awards have been deducted from this amount.  *Id.*

The settlement agreement further provides that, in the event that any check to a claimant is undeliverable or is uncashed 180 days after it is placed in the mail, the funds thus unclaimed will be turned over to Families With a Future, a project sponsored by Legal Services for Prisoners with Children, a non-profit based in San Francisco.  Dkt. No. 70-1 at 8.

**3.    Non-Monetary Benefits of the Settlement**

In addition to the monetary benefits, the settlement agreement includes a stipulation for the sealing and destruction of all arrest records, police reports, investigative reports, booking information, online data, or any other documentation or information pertaining to the arrests of the plaintiffs and those class members who submit approved claims, in the possession of the City and the County.  Dkt. No. 70-1 at 8.  The parties stipulate that the relief will be the equivalent of a determination of factual innocence pursuant to California Penal Code § 851.8.  *Id.*  The parties also request a Court order in the names of all of the plaintiffs and those class members who submit approved claims, stating that that they are factually innocent of the charges for which they were arrested and that they are thereby

1  exonerated. *Id.*

2      **4.**    **Incentive Awards and Attorneys' Fees and Costs**

3      Under the settlement agreement, the $1,360,000 payment includes all attorneys' fees

4  and costs, including the costs of administering the class settlement, and the class

5  representatives' awards approved by the Court.  Dkt. No. 70-1 at 7.  The settlement

6  agreement provides that the eight class representatives will each receive $9,000, or such

7  amount as the Court approves, and that class counsel will receive $350,000, or such sum as

8  the Court approves, for attorneys' fees and costs, including all costs associated with the

9  administration of the settlement.  *Id.*

10      **5.**    **Release of Claims**

11      The settlement agreement further provides that, upon the entry of final judgment by

12  the Court, "the Plaintiffs and Claimants shall be deemed to have, and shall have, fully,

13  finally, and forever waived, released, relinquished, discharged, and dismissed all claims

14  against the Defendants, their agents, and their employees arising from the events alleged in

15  Plaintiffs' Complaint."  Dkt. No. 70-1 at 10.  "Claimants" is defined in the settlement

16  agreement as those class members who actually file claims pursuant to the procedures set

17  forth in the Court's preliminary approval order.  *Id.* at 6.  Additionally, the settlement

18  agreement provides that "the Plaintiffs and Class Members, except those who opt out of the

19  Settlement, shall be forever barred and enjoined from commencing, instituting, prosecuting

20  or continuing to prosecute any action or other proceeding in any court of law or equity,

21  arbitration tribunal, or administrative forum, asserting any claims against the Defendants,

22  their agents, and their employees arising from the events alleged in Plaintiffs' Complaint."

23  *Id.* at 10-11.  The settlement agreement also includes a release by the defendants.  *Id.* at 11.

24      The settlement agreement provides for a dismissal with prejudice of the individual

25  defendants after preliminary approval of the settlement and formal approval of the

26  settlement by the City and the County.  *Id.* at 9-10.

27  //

28

1    **6.    Class Notice**

2        The settlement agreement further provides that, no later than 10 days after the

3    preliminary approval of the settlement, plaintiffs will disseminate the notice of settlement

4    (including the claim and exclusion forms) by mailing the notice to each class member's last

5    known mailing address, posting the notice on the class action website, and disseminating

6    information regarding the settlement agreement on social media.  Dkt. No. 70-1 at 10.  The

7    class members will then have 60 days to opt out, or file a claim form, or to object to the

8    settlement agreement following the procedure set forth in the notice.  *Id.*  For all class

9    members who fail to respond within 45 days of the mailing of the notice, plaintiffs will

10   make every effort to contact those class members through direct contact (such as phone,

11   email, Facebook, and Twitter).  *Id.*

12                              **III. DISCUSSION**

13   **A.    Class Certification**

14       Class certification requires that: (1) the class be so numerous that joinder of all

15   members individually is impracticable; (2) there are questions of law or fact common to the

16   class; (3) the claims or defenses of the class representative must be typical of the claims or

17   defenses of the class; and (4) the person representing the class must be able fairly and

18   adequately to protect the interests of all members of the class. Fed. R. Civ. P. 23(a); *Staton*

19   *v. Boeing*, 327 F.3d 938, 953 (9th Cir. 2003).

20       In addition to meeting the conditions imposed by Rule 23(a), the parties seeking class

21   certification must also show that the action is maintainable under Federal Rule of Civil

22   Procedure 23(b).  Plaintiffs here are seeking certification under Rule 23(b)(3), and

23   alternatively under Rule 23(b)(2) and (1).  Dkt. No. 62 at 23.  Plaintiffs assert that the action

24   is maintainable under Rule 23(b)(3) which allows a class action to be certified if "the court

25   finds that the questions of law or fact common to class members predominate over any

26   questions affecting only individual members, and that a class action is superior to other

27   available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P.

28   23(b); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1022 (9th Cir. 1998).

The proposed settlement class here meets the requirements for certification under Rule 23(a).  First, the 360 potential class members are sufficiently numerous that joinder of all members would be impracticable.

Second, there are questions of fact and law common to all class members, the answers to which will drive the resolution of the litigation.  *See Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011).  In a civil rights suit, "commonality is satisfied where the lawsuit challenges a system-wide practice or policy that affects all of the putative class members." *Armstrong v. Davis*, 275 F.3d 849, 868 (9th Cir. 2001), *abrogated on other grounds by Johnson v. Cal.*, 543 U.S. 499 (2005).  "In such circumstance, individual factual differences among the individual litigants or groups of litigants will not preclude a finding of commonality." *Id.*

Here, plaintiffs claim that defendants declared an unlawful assembly and corralled and arrested the entire march without notice or opportunity to disperse, and that there were no individual determinations of probable cause for arrest.  Dkt. No. 62 at 19.  Instead, plaintiffs contend that defendants created the class when they made the decision to treat the entire crowd as one, encircled it and arrested every person contained within the police lines. *Id.*  Once defendants made this decision, the class members were all treated identically in that they were arrested and incarcerated in an Alameda County jail where they endured similar conditions, with variations in the length of time in incarceration.  *Id.*; *see also* Dkt. No. 62-1.  In challenging defendants' policies and practices regarding mass arrests without probable cause and incarceration of individuals, plaintiffs raise common questions of law and fact, such as (1) whether defendants made a lawful determination that the march was an unlawful assembly; (2) whether defendants' decision not to give warnings or an opportunity to disperse before arresting the entire crowd violated the plaintiffs' and the class members' constitutional rights; (3) whether the length and conditions of incarceration violated the plaintiffs' and the class members' constitutional rights and California Penal Code § 853.6; and (4) whether the arrests and detentions violated the Oakland Police Crowd Control Policy adopted as part of the settlement agreement in *Coles, et al. v. City of Oakland* and

1  *Local 10, International Longshore and Warehouse Union, et al. v. City of Oakland*, Nos.

2  03-cv-02961 TEH and 03-cv-02962 TEH.  Dkt. No. 62 at 17-21.  *See Spalding v. City of*

3  *Oakland*, No. 11-cv-2867 TEH, 2012 WL 994644, at *2-3 (N.D. Cal. Mar. 23, 2012)

4  (granting class certification in similar action arising out of mass arrest and incarceration).

5       Third, the class representatives' claims are typical of those of the class.  For purposes

6  of the typicality inquiry, the named plaintiffs' injuries need not be identical with those of

7  the other class members, "only that the unnamed class members have injuries similar to

8  those of the named plaintiffs and that the injuries result from the same, injurious course of

9  conduct." *Armstrong*, 275 F.3d at 869.  Here, this requirement is met as all of the class

10  members were arrested in a single, coordinated mass arrest at a single location, incarcerated

11  overnight and longer, and subjected to similar conditions of custody.  *See* Dkt. Nos. 62 at

12  21-22; 62-1.

13       Fourth, there appear to be no conflicts of interest between the class representatives

14  and the class members.  Plaintiffs assert that both the class representatives and the class

15  members have a common interest in ensuring that they would not be subject to mass arrests

16  without individual determinations of probable cause, a common interest in ensuring that

17  they would be cited and released rather than transported and held for overly lengthy periods

18  of time in abject conditions.  Dkt. No. 62 at 22.  Plaintiffs further assert that each named

19  plaintiff is willing to perform the duties of a class representative, and to pursue this lawsuit

20  vigorously on behalf of the class, and there is no basis on which to argue that their interests

21  are antagonistic to those of the class.  *Id.* at 22-23.  There is no suggestion of collusion

22  between the named plaintiffs and any of the defendants.  *Id.*  There are also no perceived

23  conflicts with class counsel.  The Court finds that the named plaintiffs and their counsel will

24  fairly and adequately protect the interests of the class.

25       Further, the proposed class meets the requirements of Rule 23(b).  Plaintiffs claim

26  that defendants treated the class members as a class, as defendants encircled, arrested, and

27  imprisoned all of the class members in the same way, en masse, without making any

28  individual determinations of probable cause.  Dkt. No. 62 at 24.  Whether this conduct

violated the class members' legal rights is a common question of law and fact.  The legality

of defendants' alleged failure to give the class members notice or opportunity to disperse,

the mass arrest, the incarceration of the entire class in jail overnight, and the failure to

provide the class members with basic sleeping accommodations are subject to common

resolution.  *Id.*  Additionally, class counsel assert that the class members' damages are

generally uniform and that there were few physical injuries and low medical bills.  *See id.* at

26.  The common legal and fact questions represent a significant aspect of the case, and do

not appear to be outweighed by any questions affecting only individual members.  *See*

*Hanlon*, 150 F.3d at 1022 ("When common questions present a significant aspect of the

case and they can be resolved for all members of the class in a single adjudication, there is

clear justification for handling the dispute on a representative rather than on an individual

basis." (quoting 7A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal*

*Practice & Procedure* § 1778 (2d ed. 1986)).

Additionally, considerations of judicial economy favor litigating this case as a class

action.  As this case involves multiple claims for relatively small sums, a class action is

superior to an alternative method for adjudicating the parties' claims.  *See*

*Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1154, 1163 (9th Cir.

2001) ("[I]f plaintiffs cannot proceed as a class, some-perhaps most-will be unable to

proceed as individuals because of the disparity between their litigation costs and what they

hope to recover.").  According to the record provided, no potential class member has

expressed a desire to proceed independently and no unusual obstacles have appeared that

would make managing the class particularly difficult.

The Court finds that this action is maintainable under Federal Rule of Civil Procedure

23(a) and (b)(3), and therefore, certifies the following class: the approximately 360 people

who were arrested in the mass arrest on Broadway between 23rd and 24th Streets in

Oakland on January 28, 2012, and who were never charged with any crime related to this

arrest.  The Court further approves the named plaintiffs as class representatives, and

approves Yolanda Huang and Dan Siegel as class counsel.

**B.     Preliminary Approval of the Settlement**

Federal Rule of Civil Procedure 23(e) requires judicial approval of any settlement by a certified class.  Although there is a "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned," *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1238 (9th Cir. 1998), "[t]he purpose of Rule 23(e) is to protect the unnamed members of the class from unjust or unfair settlements affecting their rights," *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1100 (9th Cir. 2008).  Accordingly, a settlement should only be approved if it is "fundamentally fair, adequate, and reasonable." *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1375 (9th Cir. 1993) (internal quotation marks omitted).  In determining whether the proposed settlement meets this standard, the Court does not have the ability "to delete, modify, or substitute certain provisions . . . . The settlement must stand or fall in its entirety." *Id.*  Due to the dangers of collusion between class counsel and the defendant, as well as the need for additional protections when the settlement is not negotiated by a court designated class representative, settlement approval that takes place prior to formal class certification requires a higher standard of fairness. *Hanlon*, 150 F.3d at 1026.

"The Court may grant preliminary approval of a settlement and direct notice to the class if the settlement: (1) appears to be the product of serious, informed, non-collusive negotiations; (2) has no obvious deficiencies; (3) does not improperly grant preferential treatment to class representatives or segments of the class; and (4) falls within the range of possible approval." *Harris v. Vector Mktg. Corp.*, No. 08-cv-05198 EMC, 2011 WL 1627973, at *7 (N.D. Cal. Apr. 29, 2011); *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007).  The Court reviews the preliminary approval factors in turn.

**1.     The Settlement Process**

The Court first considers the means by which the parties reached their settlement. Between January 2014 and the present, the parties have participated in four all day and two part-day settlement conferences, and a number of telephonic conferences, with Magistrate Judge Laurel Beeler.  Dkt. No. 63 at 4-5.  In addition, there have been numerous

communications between the parties. *Id.* The Oakland City Council and the Alameda County Board of Supervisors have also had several reviews of the settlement before final approval in separate closed-session meetings. Dkt. No. 63 at 8. Class representatives were involved in all of the in-court settlement conferences. *Id.* The settlement thus appears to be the product of serious, informed, non-collusive negotiations. Accordingly, the process by which the parties reached their settlement weighs in favor of preliminary approval.

**2.      The Presence of Obvious Deficiencies**

The Court must next analyze whether there are obvious deficiencies in the settlement agreement. The Court previously denied preliminary approval of the original settlement agreement because of several deficiencies. Dkt. No. 68. The revised settlement agreement, Dkt. No. 70-1, has cured those deficiencies.

First, the original settlement agreement contained an error in the definition of the class, which has been corrected.

Second, the scope of the release in the original settlement agreement was impermissibly broad as it did not specify who is being released. While the scope of the release in the revised settlement agreement is still broad, it is acceptable because the claims released are limited to those "against the Defendants, their agents, and their employees arising from the events alleged in Plaintiffs' Complaint." Dkt. No. 70-1 at 10-11; *see Hesse v. Sprint Corp.*, 598 F.3d 581, 590 (9th Cir. 2010) ("A settlement agreement may preclude a party from bringing a related claim in the future even though the claim was not presented and might not have been presentable in the class action, but only where the released claim is based on the identical factual predicate as that underlying the claims in the settled class action.") (internal quotation marks and citations omitted). Additionally, the release has been revised so that it does not include claims by class members who have opted out.

Third, the original settlement agreement did not provide for a *cy pres* recipient or specify what would happen with the funds if a check is undeliverable or remains uncashed. The revised settlement agreement names as a *cy pres* recipient Families With a Future, a project sponsored by Legal Services for Prisoners with Children, a non-profit based in San

Francisco.  Dkt. No. 70-1 at 8.  The designated *cy pres* recipient appears to meet the requirements for approval set forth in *Dennis v. Kellogg Co.*, 697 F.3d 858, 865 (9th Cir. 2012) (holding that there must be "a driving nexus between the plaintiff class and the *cy pres* beneficiaries" and that the *cy pres* award must be "guided by (1) the objectives of the underlying statute(s) and (2) the interests of the silent class members, . . . , and must not benefit a group too remote from the plaintiff class").  At the preliminary approval hearing, class counsel explained that the major injuries in this case were the arrest and the incarceration, which affected the families of the class members.  Counsel further explained that Families With a Future was chosen as a *cy pres* recipient because it is dedicated to helping incarcerated people integrate in the society, and that while it is based in San Francisco, its geographic focus is Northern California, and the Bay Area in particular.

Fourth, the original settlement agreement provided that class counsel "shall" receive $350,000 for attorneys' fees and costs and that the class representatives "shall" each receive $9,000.  The revised settlement agreement clarifies that these amounts are subject to Court approval and that the Court may award a different amount than requested.  Dkt. No. 70-1 at 7.

While the Court is not approving the amount of the requested attorneys' fees and costs at this stage, the Court also notes that the supplemental declaration of Yolanda Huang shows different numbers for the hours spent on the case for herself, Dan Siegel, and Claire Lacey, compared to the amounts in her first declaration submitted in support of preliminary approval (compare Dkt. No. 70 at 5 with Dkt. No. 63-1 at 2).  The supplemental declaration also has different amounts for the costs (actual and estimated) compared to the first declaration.  *Id.*  As part of plaintiffs' motion for final approval, Yolanda Huang must provide an explanation for these discrepancies, and submit either her time records for her work on this case or a reasonably detailed breakdown of how many hours she spent on the different categories of activities.  Additionally, Yolanda Huang must provide a breakdown by category of the estimated costs of settlement administration to allow the Court to better assess their reasonableness.  Finally, Dan Siegel's declaration, Dkt. No. 69 ¶ 23, states that

two other attorneys devoted "significant time" to the case.  One of the attorneys, Anne

Weills, is not included in the chart summarizing the total attorney hours, *see* Dkt. No. 70 at

5.  Additionally, no information is provided on these two attorneys' experience or how they

spent the time billed on this case.  The motion for final approval must address these issues.

Accordingly, the lack of obvious deficiencies in the revised settlement agreement

weighs in favor of granting preliminary approval.

### 3.     Preferential Treatment

The third factor the Court considers is whether the settlement agreement provides

preferential treatment to any class member.  Under the settlement, the monetary recovery

will be distributed to class members who have submitted approved claims pro rata after

deduction of the attorneys' fees and costs and the class representatives' awards.  Dkt. No.

70-1 at 7.  Class counsel explained that the decision to apply a pro rata allocation was made

unanimously by the named plaintiffs, and was the result of extensive discussion among

plaintiffs in consultation with a number of class members.  Dkt. No. 70 ¶ 10.  Class counsel

asserts that, after evaluating the injuries received through this incident, plaintiffs

unanimously agreed that the overriding harm was the corralling, arrest, and incarceration.

*Id.*  Plaintiffs determined that while class members experienced a different length of time of

incarceration, the amount of time was a secondary harm because everyone was held in

similar conditions, namely overcrowded, filthy, cold, no access to phones, terrible food,

lack of feminine hygiene supplies, and without space to sit or lie down.  *Id.*  Class counsel

further explained that there were few physical injuries.  Dkt. No. 62 at 26.  Accordingly, the

proposed distribution of the settlement funds does not appear to grant undue preferential

treatment to any class members.

While the settlement agreement authorizes an incentive award to each of the eight

class representatives of $9,000, this incentive award, should the Court finally approve it,

does not render the settlement unfair, as "the Ninth Circuit has recognized that service

awards to named plaintiffs in a class action are permissible and do not render a settlement

unfair or unreasonable."  *Harris*, 2011 WL 1627973, at *9 (citing *Staton*, 327 F.3d at 977).

1   Additionally, while the Court is not approving the amount of the incentive award at this

2   stage, the Court notes that the proposed incentive awards here are on the high end but not

3   outside the range of reasonableness. *See Spalding*, No. 11-cv-02867 TEH, Dkt. Nos. 95-1,

4   99 (approving $9,000 incentive award); *Covillo v. Specialtys Cafe*, No. 11-cv-00594 DMR,

5   2014 WL 954516, at *8 (N.D. Cal. Mar. 6, 2014) (approving $8,000 incentive award);

6   *Barel v. Bank of Am.*, 255 F.R.D. 393, 402 (E.D. Pa. 2009) (approving $10,000 incentive

7   award). Class counsel asserts that the class representatives each had to give a full

8   deposition, spent several long days in court during settlement conferences, and were in

9   close touch with class members and class counsel throughout the nearly two and a half year

10  process since the mass arrest. Dkt. No. 63 at 8. These assertions must be supported by a

11  competent declaration at the final approval stage.

12      The Court finds no indication of unfair treatment to certain members of the class, and

13  therefore this factor supports preliminary approval.

14      **4.     Whether the Settlement Falls Within the Range of Possible Approval**

15      Finally, the Court must determine whether the proposed settlement falls within the

16  range of possible approval. "To evaluate the range of possible approval criterion, which

17  focuses on substantive fairness and adequacy, courts primarily consider plaintiff's expected

18  recovery balanced against the value of the settlement offer." *Harris*, 2011 WL 1627973, at

19  *9 (quoting *Vasquez v. Coast Valley Roofing, Inc.*, 670 F. Supp. 2d 1114, 1125 (E.D. Cal.

20  2009)). To determine whether an agreement is fundamentally fair, adequate, and

21  reasonable, the Court may preview the factors that ultimately inform final approval: "[1] the

22  strength of plaintiff's case; [2] the risk, expense, complexity, and likely duration of further

23  litigation; [3] the risk of maintaining class action status throughout the trial; [4] the amount

24  offered in settlement; [5] the extent of discovery completed, and the stage of the

25  proceedings; [6] the experience and views of counsel; [7] the presence of a governmental

26  participant; and [8] the reaction of the class members to the proposed settlement." *Id.* at *9

27  (citing *Churchill Village v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004)). As part of this

28  assessment, the Court must "compare the value of the settlement against the expected

recovery at trial" by estimating "the maximum amount of damages recoverable in a successful litigation and compare that with the settlement amount." *Id.* at *11 (internal quotation marks omitted). The Court will address first the value of the settlement.

### a.   The Value of the Settlement Supports Preliminary Approval.

Under the proposed settlement, class members who submit approved claims will receive an estimated payment of approximately $2,600. Dkt. No. 63 at 7. Class counsel notes that plaintiffs have not claimed special damages, such as wage loss or medical bills. *Id.* Class counsel calculated that the class was incarcerated as a whole for a total of approximately 13,500 hours. Class counsel asserts that, using a possible damages rate of $250 an hour based on a comparison with other cases, the class could see a potential recovery of $3.375 million if the case proceeded to trial. Based on these estimates, the recovery per class member under the settlement is approximately 28% of the estimated maximum recovery. Dkt. No. 70 ¶ 11. The settlement appears to provide for a fair amount of monetary recovery. *See Spalding*, No. 11-cv-02867 TEH , Dkt. Nos. 99, 95-1, 97 (granting final approval of settlement including total monetary settlement of $1,025,000 for 145-149 potential class members).

In addition to the monetary benefits, the settlement provides for those class members who submit approved claims that their arrest records will be sealed and destroyed and that they will be provided with a stipulated finding of factual innocence, to eliminate any possible adverse effect of the arrest on employment or licensing. Dkt. No. 63 at 7.

The Court finds that the proposed settlement confers substantial benefit on the class and that this factor supports preliminary approval.

### b.   The Remaining Factors Weigh in Favor of Preliminary Approval.

Turning to the other factors informing settlement approval, such as the strength of plaintiffs' case, the extent of discovery completed at this stage of the proceedings, the risk of maintaining class action status, and the risk, expense, and likely duration of the litigation, the Court finds that all weigh in favor of preliminary approval of the proposed settlement agreement.

1    Plaintiffs assert that it is not certain that they would prevail at trial in light of

2    defendants' defenses concerning probable cause for plaintiffs' arrests and their processing

3    at Santa Rita. Dkt. No. 70 ¶ 11. Plaintiffs further assert that there is a substantial issue

4    regarding whether the City defendants gave adequate notice to the class members regarding

5    whether their assembly was unlawful before arresting them. *Id.* The City defendants have

6    asserted that the professed purpose of the day's event was to illegally occupy a building and

7    confront the police, and that the crowd's failure to disperse from near 19th

8    Avenue/Telegraph (Rashida Muhammad St.) justified the mass arrest. Dkt. No. 62 at 9.

9    Additionally, there is a substantial issue here about whether the delay by the County in

10   releasing the class members constitutes a constitutional violation. Dkt. No. 70 ¶ 11.

11   Further litigation would involve considerable costs and a significant investment of time by

12   plaintiffs, defendants, and their respective counsel, and would burden the resources of the

13   Court. Dkt. No. 63 at 7. Plaintiffs and their counsel believe that the proposed settlement

14   confers substantial benefits on the class and the general public, and that it is fair and

15   reasonable and in the best interests of the class. *Id.* at 5. According to class counsel, the

16   overwhelming response by the class members has been positive and no objections are

17   anticipated. Dkt. No. 63-1 ¶ 9.

18       Because the balance of the factors considered by the Court weighs in favor of

19   preliminary approval, the motion for preliminary approval of the settlement is granted.

20   **C.    Class Notice**

21       **1.    Method of Providing Notice**

22       The settlement agreement provides for mailing the notice to each class member's last

23   known mailing address, posting the notice on the class action website, and disseminating

24   information regarding the settlement agreement on social media. Dkt. No. 70-1 at 10.

25   Class counsel assert that numerous class members have stayed in regular communication

26   with class counsel since the date of the arrests and during the pendency of this litigation.

27   Dkt. No. 63-1 ¶¶ 6-7. In addition, the class representatives have remained active and

28   involved in community activities and maintained regular contact with many of the class

1   members who are aware that a settlement is pending. *Id.* ¶¶ 7, 9.

2       Class counsel and plaintiffs further assert that they have compiled a comprehensive

3   and updated contact list for class members, many of whom have provided phone numbers

4   and email addresses. Dkt. No. 63-1 ¶ 8. According to class counsel, many social media

5   platforms are in place to disseminate the notice and information about this litigation. *Id.*

6   Class counsel also informed the Court that the class action website has been made live, and

7   that the website requests that potential class members email class counsel with their names,

8   current mailing addresses, email addresses, and phone numbers. Dkt. No. 70 ¶ 6. At the

9   hearing, class counsel stated that she had mailing addresses for everyone and had received

10  updated addresses from approximately 130 class members.

11      The Court approves the method of notice provided in the settlement agreement, and in

12  addition, the Court orders that the notice be disseminated by email, to the extent email

13  addresses are available to class counsel. The Court finds that the method of notice so

14  ordered provides the best notice that is practicable under the circumstances. *See* Fed. R.

15  Civ. P. 23(c)(2)(B).

16          **2.      Contents of the Notice**

17      As to the contents of the notice to the class, Rule 23 of the Federal Rules of Civil

18  Procedure requires that "[t]he notice must clearly and concisely state in plain, easily

19  understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii)

20  the class claims, issues, or defenses; (iv) that a class member may enter an appearance

21  through an attorney if the member so desires; (v) that the court will exclude from the class

22  any member who requests exclusion; (vi) the time and manner for requesting exclusion; and

23  (vii) the binding effect of a class judgment on members under Rule 23(c)(3)." Fed. R. Civ.

24  P. 23(c)(2)(B).

25      Here, the proposed class notice, Dkt. No. 70-2, describes the nature of the action, the

26  definition of the class, and the class-wide claims. The proposed notice further explains that

27  class members may appear through an attorney and that the Court will exclude those

28  members requesting exclusion. The notice also specifies the time requirements and manner

of requesting exclusion, as well as the binding effect of a class-wide judgment.  In addition, the notice explains that class members may object, indicates the time and place of the final approval hearing, provides information regarding the attorneys' fees and class representatives' incentive awards, and indicates that additional information regarding the settlement is available through class counsel, whose contact information is provided in the notice.  The notice also explains how the settlement fund will be allocated, and points to the website that contains additional information about this case and the settlement.

However, the proposed notice contains the following deficiencies:

1.     The proposed class notice contains references to page numbers but there are no page numbers on the document filed with the Court, Dkt. No. 70-2.

2.     Option 5 "Object to the Settlement" under "YOUR CHOICES," must be capitalized to be consistent with the other options.  Dkt. No. 70-2 at 2.

3.     The definition of the class in the proposed notice must be consistent with the definition of the class certified by the Court.  For example, sections 7 and 9 of the proposed notice under "WHO IS IN THE SETTLEMENT?," fail to refer to the precise location of the arrest as defined in the class definition, i.e., "on Broadway between 23rd and 24th Streets in Oakland."  Dkt. No. 70-2 at 7.

*4.*     Section 10 of the proposed notice, under "THE SETTLEMENT BENEFITS – WHAT YOU GET," states that the class representatives and class counsel "will" receive certain amounts from the total settlement.  Dkt. No. 70-2 at 7.  This section must be revised to clarify that these are proposed amounts subject to the approval of the Court.  Additionally, the same section must be revised to add the following (addition noted in italics): "The exact amount of money you will receive depends on the number of timely valid claims received *and the amounts approved by Court for attorneys' fees and costs and class representatives' incentive awards.*"  *Id.*

5.     Section 13 of the proposed notice, under "WHAT ARE YOUR OPTIONS?," must explicitly inform the class members of the scope of the class release as provided in the

settlement agreement, rather than merely refer to the settlement agreement.  Dkt. No. 70-2 at 9.

6.     The proposed notice is confusing as to what is required to object to the settlement.  Option 5 "Object to the Settlement" under "YOUR CHOICES," states that a class member may "either" write "or" speak to the Court.  Dkt. No. 70-2 at 2.  By contrast, section 17 states "To object, you must send a letter . . . ."  *Id.* at 10.  Additionally, section 18 states that a class member "may" ask the Court by letter for permission to speak at the final approval hearing but does not make clear whether such letter is required in order for a class member to speak at the hearing.  *Id.* at 11.  Section 18 of the proposed notice also erroneously cross-references section 14 instead of section 17.  The notice must be revised to clarify the class members' options and what is required to object.

7.     Sections 15 and 16 of the proposed notice, under "WHAT ARE YOUR OPTIONS?," erroneously refer to "Exclusion Claim Form."  Dkt. No. 70-2 at 9-10.  These sections must be revised to clarify that there are two separate forms—an "Exclusion Form" and a "Claim Form."

8.     The Exclusion Form erroneously directs class members to mail it to the Court instead of class counsel (compare to section 15 of the proposed class notice).  Dkt. No. 70-2 at 12.

9.     The proposed notice misspells the undersigned Magistrate Judge's name.  Dkt. No. 70-2 at 4, 11.

### IV. CONCLUSION

The Court certifies the proposed class, grants preliminary approval of the revised settlement agreement, and approves the proposed method of notice.  The Court also approves the proposed class counsel and class representatives.

Class counsel must file a second revised proposed notice, claim form, and exclusion form correcting the above deficiencies by January 12, 2015.  The date of the preliminary approval of the settlement will be deemed to be the date on which the Court issues an order approving the proposed form of notice.

1
2
3
4
5
6

    Plaintiffs' motion for final approval, and any supplemental filings in support of the requested incentive awards and attorneys' fees and costs, must be filed within 14 days of the date on which the notice is disseminated to the class members as provided in the settlement agreement.  Class counsel must file a supplemental declaration by March 30, 2015, informing the Court of the number of claims forms, exclusion forms, and objections received.

7
8
9

    The Court will hold a final approval hearing on April 1, 2015, at 1:00 p.m. in Courtroom A, 15th Floor, U.S. District Court, 450 Golden Gate Avenue, San Francisco, California.

10

    IT IS SO ORDERED.

11
12

    Date: January 5, 2015

_____
Nathanael M. Cousins
United States Magistrate Judge

13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28